IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST ENVIRONMENTAL
ADVOCATES,

                    Plaintiff,                    CV-01-510-HA

      v.

                                                      OPINION AND ORDER

U.S. ENVIRONMENTAL PROTECTION
AGENCY and NATIONAL MARINE
FISHERIES SERVICE,

                    Defendants,

THE STATE OF OREGON, NORTHWEST
PULP & PAPER ASSOC., OREGON
FOREST INDUSTRIES COUNCIL, OREGON
METALLURGICAL CORP.,

                    Intervenor-Defendants.

---

Stephanie M. Parent
Pacific Environmental Advocacy Center
10015 S.W. Terwilliger Boulevard
Portland, Oregon 97219

Page 1    Opinion and Order

Stephanie M. Parent
900 American Bank Building
621 S.W. Morrison Street
Portland, Oregon 97205
    Attorneys for Plaintiff

G. Scott Williams
Kent E. Hanson
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

James A. Maysonett
U.S. Department of Justice
P.O. Box 7369
Washington, D.C. 20026-7369
    Attorneys for Defendants

Hardy Myers
Karen L. Moynahan
Oregon Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096
    Attorneys for Intervenor-Defendant The State of Oregon

Jay T. Waldron
Brian J. King
Timothy M. Sullivan
Schwabe, Williamson & Wyatt
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, Oregon 97204-3795
    Attorneys for Intervenor-Defendants Northwest Pulp & Paper Assoc. and Oregon Forest
    Industries Council

Richard S. Gleason
Beverly C. Pearman
Michael R. Campbell
Stoel Rives
900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204
    Attorneys for Intervenor-Defendant Oregon Metallurgical Corp.

HAGGERTY, Chief Judge:

Before the court is defendants' Motion for Clarification (Doc. #108). For the following reasons defendants' motion is granted in part and denied in part.

## BACKGROUND

On March 31, 2003, the court issued its Opinion and Order granting in part and denying in part the parties' cross-motions for summary judgment. Plaintiff's Motion for Summary Judgment on the first, third, fourth, sixth, seventh, ninth, and tenth claims for relief was granted. Plaintiff's Motion for Summary Judgment on the fifth claim for relief was denied, except for certain declaratory relief granted on the alternate mixing zone rule. Defendants' Motion for Summary Judgment on the second and eighth claims for relief was granted.

The parties were ordered to submit a proposed time-line establishing the dates by which defendants must comply with the court's Order. On May 7, 2003, the parties submitted a Stipulated Compliance Schedule, which the court approves.

## DISCUSSION

Defendants request clarification on several points raised in the court's Opinion and Order. First, defendants request clarification on the court's Order that EPA "rescind its approval" of certain numeric water quality standards promulgated by the State of Oregon. In its Opinion and Order, the court found EPA's approval of certain numeric water quality criteria to be arbitrary and capricious and not otherwise in accordance with law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A). The court held that EPA acted arbitrarily and capriciously when it approved the 64°F criterion for salmonid rearing, the 50°F criterion for bull trout spawning and rearing, and the 6.0 mg/L intergravel dissolved oxygen (IGDO) criterion for

waters supportive of salmonid spawning. The court ordered EPA to rescind its approval of the criteria and to promulgate revised criteria pursuant to the Clean Water Act (CWA).

Defendants contend that an order directing EPA to "rescind its approval" could be "misconstrued" as limiting EPA's discretion by prohibiting the agency from approving the same criteria, if such approval were properly based on a complete administrative record in compliance with the APA. The court agrees that its Opinion and Order should not be misconstrued in such a way. EPA may promulgate and approve any criteria if the process of approval comports with the CWA and the APA.

The parties disagree on two points: (1) whether EPA must promulgate water quality standards if Oregon submits new or revised standards that comply with CWA requirements; and (2) the scope of consultation between EPA and NMFS required by the court.

**A. Promulgation of Water Quality Standards**

In its Opinion and Order, the court ordered EPA to rescind its approval of certain water quality criteria and to promulgate revised temperature criteria for the Willamette River, an antidegredation implementation plan, and IGDO criteria for salmonid spawning. Additionally, defendants were ordered to promulgate numeric water quality criteria for salmonid rearing and bull trout rearing and spawning, as well as certain time and place designations.

Defendants take issue with the court's direction for EPA to "promulgate" water quality criteria. Defendants request a modification of the Order such that rather than direct defendants to "promulgate" certain criteria, the Order "remand the criteria to EPA for further action consistent with the Court's opinion . . . ." Defendants' Brief in Support of Motion to Clarify at 4.

Defendants argue that the court is without authority to direct EPA to promulgate new criteria. Defendants contend that the APA limits the court's remedial power to remanding the matter to the agency for further proceedings consistent with the Opinion and Order.

In the event of a violation, the APA states, "The reviewing court shall – (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action [and] findings . . . ." 5 U.S.C. § 706. Although the court may remand the case "for additional investigation or explanation," nothing in the APA limits the court's ability to require affirmative conduct on the agency's part. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (holding that "in rare circumstances" remedies other than remanding for additional investigation are proper).

Finding nothing in the APA to restrict the court's power to remand this case to EPA with directions to promulgate revised criteria, the court considers whether such an order comports with the CWA's purpose and structure. Upon EPA's disapproval of a state submission, EPA must "notify the State and specify the changes" required to bring the submission into compliance with the CWA. 33 U.S.C. § 1313(c)(3). The state has 90 days to submit revised standards. Defendants contend that by ordering EPA to promulgate revised water quality criteria, the court will "short-circuit" the notice and cure provisions of the CWA.

If the facts in this case vaguely resembled the time-table envisioned by the CWA for notice and cure, defendants' argument might carry greater weight. However, this case involves water quality standards submitted by Oregon in 1996. In its Opinion and Order, the court found that EPA had acted improperly in approving certain standards based on insufficient evidence and inconsistent findings. A seven-year delay is far too long for the citizens of Oregon to wait for the

Page 5    Opinion and Order

state and federal governments to comply with CWA requirements. The purposes of the CWA and the interests of justice cannot be achieved by an open-ended remand that could drag the process out indefinitely. *See Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994) ("[I]n order to bring about any progress toward achieving the congressional objectives of the CWA, the EPA would have to be directed to take specific steps."); *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1352 (D. Ariz. 1995) (directing EPA to "propose and promulgate water quality standards" by certain deadlines). The court's Order directing defendants to promulgate revised standards remains unchanged.

**B. State Submission Prior to EPA Promulgation**

Defendants argue that EPA should not be required to promulgate new standards if, prior to promulgation, Oregon submits acceptable standards. Ordinarily, upon EPA's rejection of a state standard, the state may submit revisions to EPA any time prior to EPA's promulgation of the new standards. Section 303(c)(4) of the CWA states:

> The Administrator shall promulgate any revised or new standard . . . unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter.

33 U.S.C. § 1313(c)(4). The ability of the states to submit revisions under § 303(c)(4) must be understood within the larger context of the CWA. The court summarized the CWA review process in its Opinion and Order:

> Water quality standards are created and reviewed by the states at least every three years in a process known as "triennial review." 33 U.S.C. § 1313(c)(1). States must submit all new and revised standards to EPA for review. If EPA rejects a standard, it must notify the state within 90 days of the submission. If the state fails to act within 90 days, EPA shall "promptly prepare and publish proposed" water quality standards for the state. 33 U.S.C. § 1313(c)(4)(A).

Page 6    Opinion and Order

> DEQ completed its triennial review of its water quality standards on January 11, 1996, and submitted certain revisions to EPA on July 26, 1996. EPA 15. Oregon's revised standards included, *inter alia*, a 68°F temperature criterion for salmonid migration and rearing in the Lower Willamette River. On July 22, 1999, EPA rejected the criterion. Oregon took no action within 90 days of EPA's rejection. Although Oregon's inaction triggered a mandatory duty on the part of EPA to promulgate a revised standard, EPA has done nothing for over three years.

Opinion and Order at 4-5. In addition to summarizing the CWA's notice and cure provisions in its Opinion and Order, the court acknowledged the central role played by states in promulgating water quality standards. The statutory scheme establishes a reasonable time-line whereby states are given an opportunity to submit standards, and, within ninety days of EPA's rejection of those standards, an opportunity to submit revisions. Upon a state's failure to revise a rejected standard, EPA shall "promptly" promulgate new standards.

Clearly, the Congressional intent reflected in § 303's reference to "90 days" and "promptly prepare" embodies the goal of infusing some modicum of promptness in the approval process. In this case, Oregon submitted its proposed water quality standards seven years ago in the "triennial review" (*i.e.* "three years") process. At this late stage in the approval process following EPA's lengthy failure to comply with its CWA duties, the court's primary goal is "to ensure ultimate compliance with the CWA . . . ." *Alaska Ctr. for Env't*, 20 F.3d 981, 986. This compliance should occur as quickly as possible.

If the court were to allow Oregon to intervene without a mandatory time-line in place, further delay is quite likely. Upon Oregon's submission of revisions, EPA would then be afforded time to review those revisions and then accept or reject them. After EPA's review period, Oregon would be given more time to again submit revisions to any rejected standards, which EPA could again reject. If Oregon failed to submit revisions, EPA would be required to

"promptly" promulgate its own standards.  As the Opinion and Order notes, EPA contended in this litigation that a delay of over three years satisfies its obligation to act "promptly."  Opinion and Order at 7-8.

Defendants contend, however, that the extended delay outlined above can be avoided by requiring EPA to "take final action on each matter identified by the Court" "by the stipulated deadlines . . . ."  Defendants' Memorandum Regarding Stipulated Compliance Schedule at 4.  In order to qualify as a "final action," EPA must either promulgate the new standards itself or "*approve* a submission by the State of Oregon for each such matter."  *Id.* (emphasis added).  The Stipulated Compliance Schedule states, "The EPA Administrator shall sign proposed regulations on or before October 1, 2003, and final regulations on or before March 2, 2004 . . . ."  As long as these deadlines are met, Oregon may submit proposed standards to EPA.  Either Oregon or EPA may serve as the source of the standards as long as the Administrator signs the proposed regulations by October 1, 2003.  If Oregon fails to submit proposals by that date, the State's opportunity to participate in the promulgation process is foreclosed entirely.  Likewise, final regulations must be signed by March 2, 2004, irrespective of whether Oregon has submitted adequate proposals.

## C. EPA's Obligation to Consult with NMFS

EPA seeks clarification of its duty to consult with NMFS in the wake of the court's Order.  In its Opinion and Order, the court found that EPA's approval of certain standards violated its duties under § 7(a)(2) of the Endangered Species Act (ESA).  16 U.S.C. § 1536(a)(2); *see* Opinion and Order at 31-32.  The court ordered NMFS to "withdraw its biological opinion and reinitiate consultation and issue a new opinion."  Opinion and Order at 31.  Additionally, the

court ordered EPA to "promulgate temperature, IGDO, use designation, and narrative criteria . . . or issue a new determination on the existing criteria based on a no-jeopardy finding that is reasonably supported by the available evidence." *Id.* at 33.  The parties dispute whether defendants are required to promulgate additional narrative criteria in light of the court's rejection of plaintiff's challenge to the narrative criteria discussed in the Opinion and Order.  Defendants do not have to promulgate narrative criteria that the court considered and accepted in its Opinion and Order.  However, in the course of promulgating the additional standards mandated by the court's Opinion and Order, EPA may determine that additional narrative criteria are required in order to comply with its obligations under the APA and the CWA.  Defendants do not have to consult on those criteria that have been withdrawn.  Finally, no consultation is required for any actions that fall outside the scope of the litigation.

The court ordered EPA to promulgate certain temperature criteria, IGDO standards, an antidegredation implementation plan, and time and use designations.  In the promulgation process, EPA must satisfy the agency's CWA § 7(a)(2) obligations, which will necessarily include consultation with NMFS.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 9    Opinion and Order

**CONCLUSION**

For the foregoing reasons, defendants' Motion for Clarification (Doc. #108) is granted in part and denied in part. The parties' Stipulated Compliance Schedule is adopted.

IT IS SO ORDERED.

DATED this   11   day of June, 2003.

    /s/ Ancer L.Haggerty
    Ancer L. Haggerty
    United States District Judge