IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

NORTHWEST ENVIRONMENTAL
ADVOCATES,

                Plaintiff,                CV-01-510-HA

    v.

                                          OPINION AND ORDER

U.S. ENVIRONMENTAL PROTECTION
AGENCY and NATIONAL MARINE
FISHERIES SERVICE,

                Defendants,

THE STATE OF OREGON, NORTHWEST
PULP & PAPER ASSOC., OREGON
FOREST INDUSTRIES COUNCIL, OREGON
METALLURGICAL CORP.,

                Intervenor-Defendants.

Stephanie M. Parent
Pacific Environmental Advocacy Center

Page 1    Opinion and Order

10015 S.W. Terwilliger Boulevard
Portland, Oregon 97219

Bart A. Brush
900 American Bank Building
621 S.W. Morrison Street
Portland, Oregon 97205
    Attorneys for Plaintiff

Kent E. Hanson
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

James A. Maysonett
U.S. Department of Justice
P.O. Box 7369
Washington, D.C. 20026-7369
    Attorneys for Defendants

Hardy Myers
Karen L. Moynahan
Oregon Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096
    Attorneys for Intervenor-Defendant the State of Oregon

Jay T. Waldron
Brian J. King
Timothy M. Sullivan
Schwabe, Williamson & Wyatt
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, Oregon 97204-3795
    Attorneys for Intervenor-Defendants Northwest Pulp & Paper Assoc. and Oregon Forest Industries Council

Richard S. Gleason
Beverly C. Pearman
Michael R. Campbell
Stoel Rives

Page 2    Opinion and Order

900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204
    Attorneys for Intervenor-Defendant Oregon Metallurgical Corp.

Page 3    Opinion and Order

HAGGERTY, Chief Judge:

Before the court is plaintiff's Motion for Further Injunctive Relief (Doc. #117). For the following reasons plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The relevant procedural history of this case was summarized in the court's June 11, 2003, Opinion and Order on defendant's Motion for Clarification:

> In its [March 31, 2003] Opinion and Order, the court found EPA's approval of certain numeric water quality criteria to be arbitrary and capricious and not otherwise in accordance with law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A). The court held that EPA acted arbitrarily and capriciously when it approved the 64°F criterion for salmonid rearing, the 50°F criterion for bull trout spawning and rearing, and the 6.0 mg/L intergravel dissolved oxygen (IGDO) criterion for waters supportive of salmonid spawning. The court ordered EPA to rescind its approval of the criteria and to promulgate revised criteria pursuant to the Clean Water Act (CWA) . . . .

Opinion and Order, June 11, 2003, at 3-4. In addition to the violations of the CWA, 33 U.S.C. § 1313, and APA, 5 U.S.C. § 706, identified above, the court found error in defendants' consultation undertaken pursuant to the Endangered Species Act (ESA). 16 U.S.C. § 1536. The court also rejected Oregon's "alternate mixing zone rule," holding that the rule was not properly submitted to EPA prior to May 30, 2000. 40 C.F.R. § 131.21(c). Accordingly, the court granted declaratory relief to plaintiff, finding that the alternate mixing zone rule was not an applicable water quality standard for Oregon under the CWA. Opinion and Order, March 31, 2003, at 28.

The parties entered into a Stipulated Compliance Schedule, which the court adopted on June 11, 2003. EPA committed to signing proposed regulations of revised standards by October 1, 2003, and final regulations by March 2, 2004.

Page 4    Opinion and Order

**STANDARDS**

Plaintiff may obtain a permanent injunction from this court upon a showing of a "likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996); *American-Arab Anti-Discrimination Comm. v. Reno,* 70 F.3d 1045, 1066-67 (9th Cir. 1995) (citing *LaDuke v. Nelson,* 762 F.2d 1318, 1322 (9th Cir. 1985)); *Save the Yaak Comm. v. J.R. Block*, 840 F.2d 714, 722 (9th Cir. 1988).

**DISCUSSION**

Plaintiff contends that the court-ordered remedy "leaves a gap in the relief and is likely to result in irreparable harm to Plaintiff." Plaintiff's Memorandum in Support of Motion for Further Injunctive Relief at 1. Plaintiff seeks three specific forms of relief: (1) enjoining EPA to review and revise past Total Maximum Daily Loads (TMDLs) approved in reliance on the rejected standards; (2) enjoining the Oregon Department of Environmental Quality (DEQ) from issuing any new, renewed, or modified National Pollution Discharge Elimination System (NPDES) permits that rely on the rejected standards; and (3) enjoining DEQ to withdraw NPDES permits issued in reliance on the alternate mixing zone rule.

    **A. EPA's Approval of TMDLs**

TMDLs are pollutant limits established under the CWA for waters that fall below a certain water quality standard due to the presence of one or more pollutants. *See* 33 U.S.C. § 1313(d). Plaintiff alleges that EPA has approved several TMDLs that incorporate the water quality standards rejected by the court. Plaintiff seeks an order enjoining EPA "to review and revise relevant TMDL[s] .

. . that were issued by Oregon and approved by EPA pursuant to the deficient standards." Plaintiff's Memorandum in Support of Motion for Further Injunctive Relief at 7.

This court may entertain only justiciable questions that involve an actual "case or controversy." U.S. Const. art. III, § 2, cl. 1; *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001). A dispute that may potentially arise but does not currently involve an immediate threat of harm to a plaintiff is unripe for review. Plaintiff's request to enjoin EPA to review and revise TMDLs is unripe for review. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-49 (1967) (noting that the ripeness doctrine protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties"), *rev'd on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).

TMDLs must be calibrated to the "applicable water quality standards." 33 U.S.C. § 1313(d)(1)(C). Plaintiff concedes that the current "applicable water standards" include water criteria rejected by the court because EPA has not yet replaced them with the revisions due next March. 40 C.F.R. § 131.21(c). Because it would be meaningless to order EPA to review TMDLs based on the rejected standards, plaintiff seeks an order directing EPA to review and revise the standards *after* EPA has promulgated new standards in accordance with the court's Opinion and Order. At this point in the litigation, no party can accurately predict what standards EPA will promulgate to replace those rejected by the court. As the court stated in response to defendants' Motion for Clarification, EPA may adopt water quality standards that are identical to those rejected by the court, so long as the promulgation process comports with the CWA, ESA, and APA. Plaintiff fails to explain how or why the court should order EPA to review and revise TMDLs based on unknown water quality standards that will be

Page 7     Opinion and Order

promulgated at some point in the future. Because plaintiff fails to present a "concrete factual situation" on which the court might base such an order, plaintiff's Motion for Further Injunctive Relief against EPA is unripe for review. *Thomas v. Anchorage Equal Rights Com'n,* 220 F.3d 1134, 1141 (9th Cir. 2000).

Even if the court chose to evaluate the merits of plaintiff's request, no relief would be possible. A mandatory injunction must be "specific in terms" and "describe in reasonable detail" the conduct to be compelled. Fed. R. Civ. P. 65(d). Plaintiff's proposed order would enjoin EPA to "review and revise relevant TMDLs that were issued by Oregon and approved by EPA pursuant to the deficient standards . . . ." Plaintiff's Amended Proposed Order Granting Plaintiff's Motion for Further Injunctive Relief at 2. An order directing EPA to "review and revise relevant TMDLs" fails to specifically identify the conduct required of EPA. See *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995) (noting that an injunction must clearly describe the conduct required of the enjoined party). Without further guidance, the scope of EPA's review of past TMDLs could be quite cursory and still comply with the proposed language of the order. The proposed order gives that agency little guidance as to what conduct would constitute sufficient "review" of past TMDLs. Further, the court would be unable to enforce the injunction and monitor EPA's compliance because there are no standards for the agency to use in determining when its "review" of TMDLs would require the agency to "revise" them. Plaintiff's Motion for Further Injunctive Relief against EPA is denied.

**B. Relief Sought Against DEQ**

Plaintiff seeks an injunction preventing DEQ from issuing any new, renewed, or modified NPDES permits and to order DEQ to withdraw all NPDES permits that were issued in reliance on the

Page 8     Opinion and Order

alternate mixing zone rule. The court first determines whether any jurisdictional bars prohibit the exercise of equitable remedies against the state defendant.

The Eleventh Amendment immunizes states from suits by private parties in federal court absent a valid waiver or abrogation of the immunity. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 669-70 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *BV Eng'g v. Univ. of Cal., Los Angeles,* 858 F.2d 1394, 1395-96 (9th Cir. 1988).

The immunity has always been characterized as a "personal privilege which [the state] may waive at [its] pleasure." *Clark v. Barnard,* 108 U.S. 436, 447 (1883); *see College Sav. Bank,* 527 U.S. at 666 ("[A] State may waive its sovereign immunity by consenting to suit."). Such a waiver of sovereign immunity is present when the state voluntarily intervenes in the litigation. *Gunter v. Atl. Coast Line R. Co.,* 200 U.S. 273, 284 (1906) ("[W]here a State voluntarily becomes a party to a cause, and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment.").

Plaintiff commenced this action against the federal defendants on April 12, 2001. DEQ filed a Motion to Intervene on May 31, 2001. Although DEQ could have limited its intervention to specific claims, its Motion to Intervene embraced the entire subject matter of the litigation. *See* Fed. R. Civ. P. 24(c). DEQ's Motion to Intervene stated:

> The State has a recognized interest in establishing and implementing water quality standards for Oregon's waters, which is the subject of this lawsuit. This interest will be seriously impaired if the State is not permitted to intervene.

Page 9    Opinion and Order

Motion to Intervene at 1.  By voluntarily submitting itself to this court's jurisdiction, Oregon waived its sovereign immunity.  Further, this waiver was not limited to individual claims but encompassed the entire subject matter of the complaint.

In addition to asserting sovereign immunity as a defense, defendants contend that the court lacks subject matter jurisdiction to hear the claims against Oregon.  The question of sovereign immunity does not "implicate a federal court's subject matter jurisdiction in any ordinary sense . . . ."' *Armstrong v. Davis*, 275 F.3d 849, 877 (9th Cir. 2001) (citing *ITSI TV Prods., Inc. v. Agric. Ass'ns.,* 3 F.3d 1289, 1291 (9th Cir. 1993)).  Prior to Oregon's intervention, the court clearly had "federal question" jurisdiction because plaintiff asserted federal claims under the CWA, ESA, and APA. 28 U.S.C. § 1331.  Oregon's intervention did not change the court's subject matter jurisdiction over those claims.  As discussed below, in order to effectuate its judgment, the court has the authority to grant injunctive relief against any adverse party to the litigation whose rights have been determined.  By intervening and voluntarily waiving its sovereign immunity, Oregon became an adverse party to the litigation.  Therefore, the court has the authority to grant plaintiff's Motion for Further Injunctive Relief, if the court determines that such relief is necessary or proper.

Defendants contend that plaintiff's Motion for Further Injunctive Relief should be construed as a motion to amend the complaint.  If the court were to construe the motion as such, the motion would be untimely.  Ordinarily, leave to amend shall be freely given.  Fed. R. Civ. P. 15(a).  However, an amendment may be denied upon a finding of undue delay or prejudice to the opposing party.  *Yakama Indian Nation v. State of Wash. Dept. of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999).  In its summary judgment Opinion and Order, the court found "significant evidence of undue delay" and

Page 10     Opinion and Order

denied plaintiff's Motion to Amend to add new claims to the complaint. Opinion and Order, March 31, 2003, at 33. Likewise, if the complaint failed to pray for the relief currently sought, a motion to add an additional prayer for relief following the court's resolution of all claims on summary judgment would be untimely.

However, contrary to defendants' contention, the current motion cannot be construed as a motion to amend the complaint. The complaint was brought pursuant to the Declaratory Judgment Act, which states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. § 2202. In addition to citing the Declaratory Judgment Act, the complaint prayed for such relief as the court deemed just and proper. These recitations put defendants on notice that further injunctive relief might be sought following the resolution of all claims on summary judgment.

Defendants correctly note that the Declaratory Judgment Act "does not itself confer federal subject matter jurisdiction; rather, it vests a district court with discretion to proceed with respect to a certain type of case already 'within its jurisdiction.'" *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1288 (9th Cir. 1996) (citing 28 U.S.C. § 2201(a)). As discussed above, the court has federal question jurisdiction over the claims brought pursuant to the CWA, ESA, and APA. Although these are federal claims that govern the behavior of federal agencies, Oregon voluntarily intervened in the case. In doing so, the state exposed itself to the court's broad equitable powers, which may be exercised in order to effectuate the declaratory relief already granted to plaintiff. Further, relief granted pursuant to the Declaratory Judgment Act extends to "any adverse party whose rights have been determined by such

Page 11   Opinion and Order

judgment." Oregon's voluntary intervention positioned the state as an adverse party whose rights and responsibilities were determined when the court rejected EPA's approval of Oregon's deficient water quality criteria and use designations. Because there is no jurisdictional bar limiting the court's power to grant injunctive relief against Oregon, the court will consider whether the relief sought pursuant to the Declaratory Judgment Act is warranted with regard to new, renewed, or modified NPDES permits and all such permits that were issued in reliance on the alternate mixing zone rule.

### 1. New, Renewed, and Revised NPDES Permits

In order to effectuate its water quality management system, DEQ issues NPDES permits. A point source may not discharge any pollutant into the navigable waters of the United States without an NPDES permit. 33 U.S.C. §§ 1311(a), 1342. DEQ relies on Oregon's water quality standards in order to determine the number and type of NPDES permits to issue annually. Plaintiff seeks to enjoin DEQ from issuing any new, renewed, or modified NPDES permits that rely on the standards rejected by the court until EPA has promulgated revised water quality standards in accordance with this Court's Order. As noted above, EPA is scheduled to sign proposed regulations by October 1, 2003, and final regulations by March 2, 2004.

Pursuant to the Declaratory Judgment Act, the relief sought should be granted only if the court determines that the injunction is "necessary or proper" based on the declaratory relief already granted. The court finds that enjoining DEQ from issuing any new, renewed, or revised NPDES permits is neither necessary nor proper. It is unnecessary because the summary judgment Opinion and Order found that EPA's approval of various water quality standards violated the CWA and APA and directed

EPA to promulgate revised standards. EPA will be able to promulgate revised standards regardless of the status of DEQ's permitting system.

Further, it would not be "proper" to grant such relief given the procedural history of this litigation and the stipulated deadlines for EPA's compliance with the court's Order. *See Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988) (noting that the Declaratory Judgment Act requires a court to find only that the requested relief is proper based on the declaratory judgment). According to EPA's own regulations, all water quality standards that were effective under state law and properly submitted to EPA prior to May 30, 2000, are the legally applicable standards for the state unless or until the EPA replaces them with more stringent standards. 40 C.F.R. § 131.21(c). This regulation is known as the "Alaska Rule" because it was promulgated in compliance with a settlement agreement to which the Alaska Clean Water Act Alliance was a party. 65 F.R. 24642 (citing *Alaska Clean Water Act Alliance v. Clark*, (W.D. Wash. 1997) (No. C96-1762R)). Defendants contend that the Alaska Rule governs the outcome of this motion. With the exception of the alternate mixing zone rule discussed below, all of the water quality standards involved in this litigation were adopted and submitted by DEQ prior to May 30, 2000. Further, EPA has not repealed or replaced these standards. Therefore, applying the Alaska Rule would mean that the standards rejected by this court are legally enforceable until EPA promulgates final regulations by March 2, 2004.

The Alaska Rule cannot constrain this court's equitable power to enjoin DEQ from issuing new, renewed, or modified NPDES permits. In its summary judgment opinion, the court found that EPA had violated the CWA, ESA, and APA in its handling of Oregon's water quality standards. Certainly EPA

Page 13     Opinion and Order

cannot promulgate a regulation stating that notwithstanding a federal court's rejection of various water quality standards, those standards are in fact "legally enforceable." Such an action would offend the APA's careful balance between agency action and judicial review. EPA is without authority to constrain this court's equitable power.

Although not bound by the Alaska Rule, the court is mindful of defendants' concern for maintaining some continuity in Oregon's water quality standards pending EPA's promulgation of revised standards next year. DEQ receives on average ten new permit applications each year. In the next twelve months, 29 existing permits will expire. These permits will add to the substantial backlog of permits awaiting final action by DEQ. As discussed above, NPDES permits play a central role in the state's efforts to establish water pollution requirements for point sources and ultimately to attain water quality standards in order to reduce temperatures in Oregon's waterways. Of particular concern to the court is the substantial delay manifested in the approval process for water standards originally submitted to EPA in 1996. Plaintiff acknowledged the central problem of delay present in this litigation at oral argument. "The more delay there is, the more delay there is in achieving the integrity of the nation's water, and in the meantime, imperiled fish species at the risk of extinction having to deal with those habitat conditions." Oral Argument Transcript, June 18, 2003, at 8.

Prohibiting DEQ from utilizing its primary mechanism for regulating point sources over the next year will do nothing more than further backlog the state's permitting system. The public interest cannot be served by infusing more delay in an approval process now long overdue. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). In

Page 14    Opinion and Order

the interests of maintaining continuity and consistency in Oregon's water quality standards pending EPA's promulgation of revised standards, the court finds it neither necessary nor proper to enjoin DEQ from issuing any new, renewed, or modified NPDES permits.

### 2. Alternate Mixing Zone

In its summary judgment Opinion and Order, the court summarized DEQ's alternate mixing zone rule:

> A mixing zone is a limited area of water where discharge is mixed with the waterway. Numeric water quality criteria can be exceeded in this zone, but acutely toxic conditions must not be present. Oregon's standard mixing zone rule requires DEQ to "define a mixing zone in the immediate area of a wastewater discharge." See OAR 340-041-0445(4). The "alternate" mixing zone rule allows for a larger area of the waterway to exceed numeric values.

Opinion and Order, March 31, 2003, at 25-26.

The court granted declaratory relief to plaintiff, finding that Oregon never properly submitted the alternate mixing zone rule to EPA. Opinion and Order at 28. The court found that the alternate mixing zone rule was not an applicable water quality standard for Oregon under the CWA. Plaintiff seeks an order requiring DEQ to withdraw all permits issued in reliance on the alternate mixing zone rule. DEQ has issued only two permits based on the alternate mixing zone rule, one of which is held by intervenor Oregon Metallurgical Corp. (Oremet).

The court need not abstain from considering plaintiff's motion. Citing *Buford v. Sun Oil Co.*, Oremet argues that federalism and comity require this court to abstain from enjoining DEQ to withdraw NPDES permits issued in reliance on the rejected alternate mixing zone rule. 319 U.S. 315 (1943). Oremet correctly notes that state-based administrative and legal mechanisms are in place enabling

plaintiff and other interested parties to challenge NPDES permits. However, Oremet fails to recognize that abstention, as defined in *Buford* and its progeny, applies only when there is both a need for state centralization *and* an unclear issue of state law. *See, e.g., Zablocki v. Redhail*, 434 U.S. 374, 379 n.5 (1978) ("Unlike *Buford* . . . this case does not involve complex issues of state law . . . ."). Here, there is no complex issue of state law. DEQ cannot approve NPDES permits based on an alternate mixing zone rule that never existed according to federal law.

Defendants contend that plaintiff has an adequate remedy at law because, subsequent to the commencement of the litigation, plaintiff challenged the permit issued to Oremet in the Oregon Circuit Court for Multnomah County. *Weinberger*, 456 U.S. at 312 (noting that a permanent injunction should be issued only to protect rights "otherwise irremediable"). Defendants cite no authority for the proposition that parallel litigation in another court constitutes an "adequate remedy at law," as the term is understood in the context of equitable remedies. Following this court's summary judgment ruling, plaintiff moved to amend the petition in the state action to challenge Oremet's permit arguing that the permit was issued in reliance on the alternate mixing zone rule rejected by this court. Oremet opposed the amendment and the Motion to Amend has been stayed pending resolution of the claims here. Defendants' contention that plaintiff's Motion to Amend in the state action, which has not been granted and is opposed by Oremet, constitutes an "adequate remedy at law" is without merit.

The injunctive relief sought by plaintiff is necessary to the declaratory relief already granted. 28 U.S.C. § 2202. All state-issued NPDES permits must comply with the CWA and federal regulations. 33 U.S.C. § 1342. *See Long Island Soundkeeper Fund, Inc. v. New York City Dept. of Envtl. Prot.*, 27 F. Supp. 2d 380, 382 n.1 (E.D.N.Y. 1998). By definition, any permit issued by DEQ in

reliance on the alternate mixing zone rule cannot comply with the CWA because the rule was never properly submitted to EPA.  Because the permits were issued based on a nonexistent rule, the permits are void under the CWA.  33 U.S.C. § 1342(b).  The declaratory relief already granted on this issue would be rendered meaningless if current permit-holders were allowed to discharge and DEQ were allowed to issue additional NPDES permits based on the rejected alternate mixing zone rule.  DEQ is ordered to withdraw all NPDES permits issued in reliance on the alternate mixing zone rule.  DEQ is enjoined from issuing any new, renewed, or modified permits in reliance on the rule, unless or until the rule is properly submitted by DEQ and approved by EPA.

In the parallel state proceedings Oremet acknowledged the necessity of this injunction.  Oremet stated, "If and when there is a final judgment that the alternate mixing zone rule is not effective under federal law, DEQ would have to withdraw Oremet's NPDES permits . . . ."  Oremet's Opposition to Motion to Abate Stay and Amend Petition at 5, *Northwest Envtl. Def. Ctr. et al. v. Dep't of Envtl. Quality*, (Or. Cir. Ct. April 30, 2003) (No. 01108-08400).  DEQ also conceded in the state action that "if the rule is ultimately held to be inapplicable and ineffective for CWA purposes, any NPDES permits issued by DEQ pursuant to that rule will have to be withdrawn for reconsideration."  DEQ's Response to Motion to Abate Stay and Amend Petition at 2, *Northwest Envtl. Def. Ctr. et al. v. Dep't of Envtl. Quality*, (Or. Cir. Ct. May 2, 2003) (No.01108-08400).

On April 29, 2003, subsequent to the court's summary judgment Opinion and Order, DEQ submitted the alternate mixing zone rule to EPA for approval.  Because this submission was made "on or after May 30, 2000," EPA must either approve the rule or promulgate its own standard before it takes legal effect.  40 C.F.R. § 131.21(c).  Under the CWA, EPA must approve the submission within

Page 17     Opinion and Order

60 days or disapprove it within 90 days of the submission. 33 U.S.C. § 1313(c)(3). EPA should be given time to evaluate the submission prior to the effective date of this injunction. Accordingly, the injunction will take effect only if EPA fails to approve the submission within 60 days of this Order, including completion of ESA consultation.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Further Injunctive Relief (Doc. #117) is granted in part and denied in part.

IT IS SO ORDERED.

DATED this  14  day of July, 2003.

                                                /s/ Ancer L. Haggerty
                                                       Ancer L. Haggerty
                                                 United States District Judge